UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

SOUTHERN DIVISION


PAUL EZRA RHOADES,               )    Case No. CV11-445-REB
                                 )
        Plaintiff,               )
                                 )    Boise, Idaho
        vs.                      )    November 9, 2011
                                 )    1:07 p.m.
BRENT REINKE, et al,             )
                                 )
        Defendants.              )
                                 )
. . . . . . . . . . . . . . . )

VOLUME I OF I
TELEPHONIC STATUS CONFERENCE
BEFORE THE HONORABLE RONALD E. BUSH
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:
For the Plaintiff:          MR. OLIVER W. LOEWY
(by telephone)              MS. TERESA A. HAMPTON
                            Federal Defender Services of Idaho
                            702 West Idaho Street, Suite 900
                            Boise, Idaho  83702


For the Defendants:         MS. KRISTA LYNN HOWARD
(by telephone)              MR. MARK KUBINSKI
                            MR. LAMONT ANDERSON
                            Office of Attorney General
                            Idaho Department of Corrections
                            1299 N. Orchard Street, Ste. 110
                            Boise, Idaho  83706



COURT RECORDER:             TRANSCRIPTION BY:

TRINIDAD DIAZ               CANYON TRANSCRIPTION
U.S. District Court         P.O. Box 387
                            Caldwell, Idaho  83606
                            (208)454-1010


Proceedings recorded by electronic recording.  Transcript
produced by transcription service.

1                        (Proceedings begin.)

2              CLERK:  Counsel, the Court will hear at this time the

3       status conference in Civil Case No. 11-445, Rhoades versus

4       Reinke, et al.

5              COURT:  Good afternoon, Counsel.  Thank you for making

6       yourselves available on such short notice.  I assume, Mr. Loewy,

7       you'll be talking on behalf of plaintiff and, Ms. Howard, you'll

8       be talking on behalf of defendants again.  Is that right?

9              MR. LOEWY:  Yes, Your Honor.

10             MS. HOWARD:  Yes, Your Honor.

11             COURT:  All right.  So I'll assume that if I'm hearing

12      your respective male and female voices, that's who we have on

13      the line and if somebody else gets on, then please identify

14      yourself.

15             Counsel, I want to take up three matters with you at

16      this time.  The first is the issue raised by Mr. Loewy's letter

17      to the Court of earlier today regarding the availability of Dr.

18      Heath.  The second is an issue related to this discovery about

19      the identity of the individuals who would be involved in the

20      execution process and then the third is a question I have for

21      the State about the rule-making process that's been conducted in

22      this case.

23             So let's deal first with, Mr. Loewy, I read what you

24      have in the letter that was sent to me earlier today and I want

25      to hear more from you on that issue.  I'm concerned about giving

1    you an opportunity to present Mr. Loewy -- or I mean Dr. Heath's

2    testimony in person but I'm not going to have him become the

3    tail that wags the dog of the case either.  I mean he's in New

4    York but he's chosen to involve himself in a case in Idaho and

5    he doesn't get to dictate what goes on in terms of his own

6    schedule.

7         So having said that, the alternative to having to move

8    the hearing would be to involve him by video conference.  Ms.

9    Case has been in contact with both of the federal courthouses in

10   New York City and the courthouse in Brooklyn would be available

11   to provide a video conference setup for him for tomorrow and so

12   what I need to know is there any reason that we could not put

13   him on by video conference, Mr. Loewy, through the federal court

14   in Brooklyn?

15        MR. LOEWY:  Judge, we are working on trying to get

16   those logistics figured out with Dr. Heath.  I believe but I am

17   not certain that he would be available tomorrow but it is still

18   logistically for him I think still not -- not clear and so we --

19   and I'm not telling you anything you don't know, I understand

20   that, but what is clear of course is that Saturday would be

21   certainly clear for him.

22        COURT:  Well, what is the issue -- as an officer of the

23   court, what has Dr. Heath said to you would be the impediment to

24   him being able to appear tomorrow afternoon by video conference?

25        MR. LOEWY:  My understanding, Your Honor, is that Dr.

1    Heath has a full-time clinical practice and that he has some

2    obligations which need to be rearranged and I don't -- as an

3    officer of the court, I can't give you more detail because I

4    don't have it.  I am guessing that those obligations can be

5    rearranged but I am not certain.

6         COURT:  Okay.  All right.  Then what I would need --

7    when was the last time that you had a chance to visit with him

8    about these matters?  Was it today?

9         MR. LOEWY:  Oh, my goodness.  This morning but,

10   candidly, I'm not sure what time but it was certainly this

11   morning.

12        COURT:  Well, I guess what I'm after is is he actively

13   working on trying to clear the decks for tomorrow afternoon or

14   is he assuming that he'd be coming on Saturday if that's

15   acceptable?

16        MR. LOEWY:  I have sent him an e-mail telling him that

17   I am, as always, hopeful that it will be Saturday but I think

18   that we have to assume -- in fact I believe the word in my

19   e-mail was we must assume that the hearing will proceed

20   tomorrow.

21        COURT:  All right.  Then we're going to proceed to go

22   ahead and go forward with things for tomorrow.  We will have the

23   arrangements made in Brooklyn.  I understand that Ms. Case tells

24   me that -- well, obviously Dr. Heath will know better than any

25   of us how to get from wherever he is to the Brooklyn courthouse

1    and what we can do -- now, that -- here's what I would like to
2    be able to do, Mr. Loewy, is to put him on first so that he gets
3    on and off the stand without having issues raised about having
4    to have people stay overtime at the Brooklyn federal courthouse
5    because we'll start at 1:30 here.  That will be 3:30 p.m.
6    eastern time and I presume that an hour and a half will be more
7    than enough time for him to testify and any cross-examination
8    there might be.  So obviously that would be his schedule so what
9    we're talking about is whatever he needs to clear to make that
10   something that can be done.
11          Now, if he has obligations of a professional nature
12   that put a patient at risk or otherwise are things of a
13   significant health issue for some patient or some emergency
14   surgery that is -- well, I shouldn't say emergency at this point
15   but of that nature as opposed to moving appointments or things
16   of that sort, then that would be of more significance to me than
17   the other.
18          Mr. Gordon just handed me a note reminding me that we
19   were going to take up the motions to seal first so it actually
20   might be that we wouldn't start Dr. Heath's testimony until
21   closer to 2:00 in the afternoon.  But in any event, I'd want to
22   do him first so that we could get him taken care of as quickly
23   as we can.
24          And in light of that, what I might do is move our
25   hearing to 1:00 so that we can keep that extra half an hour

1    intact but let me get back to that.

2          All right.  So that's my plan.  Ms. Case will continue

3    to make those arrangements.  Mr. Loewy, I need you to have

4    further conversation with Dr. Heath and, you know, he needs to

5    be completely frank with you about what it is his obligations

6    are and if you come back to me and represent to me as an officer

7    of the court that it is not something that can realistically and

8    properly be done, then I'll consider the other half of your

9    request but my preference is to go forward for tomorrow.

10          Now, on the -- anything else you want to say or be

11   heard on that regard, Mr. Loewy?

12          MR. LOEWY:  Just a couple of questions, Your Honor.

13   First, Dr. Heath it's my understanding practices at the Columbia

14   University Medical Center which is on the upper part of

15   Manhattan.  It would be -- I of course don't know what

16   conversations Ms. Case has had with the federal courts in New

17   York City but certainly getting to Brooklyn is somewhat more

18   time-consuming than getting to the federal courthouse at the

19   lower end of Manhattan.  And I wonder whether we ought to get

20   the federal courthouse at the lower end of Manhattan instead but

21   there may be other reasons to go to Brooklyn that I'm unaware

22   of.

23          COURT:  That's where we tried first and that inn is

24   full.  They have no facilities for us.

25          MR. LOEWY:  Very well.

1          COURT:  However, Ms. Case was informed by whoever she

2     talked to initially at the Manhattan courthouse that at least on

3     the subway, it's just another stop on the same line to the

4     federal courthouse in Brooklyn.

5          MR. LOEWY:  That is very true.

6          COURT:  So whether it's a whole lot longer in a cab, I

7     don't know, so that's why we went to the Brooklyn site.  Okay.

8     Anything else, Mr. Loewy, on that topic?

9          MR. LOEWY:  No.

10         COURT:  Now, Ms. Howard, if I conclude that -- here's

11    the deal.  I'm not inclined under any circumstances to change

12    the hearing and move it past November 18 to accommodate Dr.

13    Heath's schedule.  So if the only way that he can testify is to

14    be here on Saturday, then I'll contact the marshal's -- well,

15    actually, I've talked to the marshal's office about whether that

16    would be feasible and tentatively have made those arrangements

17    if that is the only solution to that issue.  But that's only

18    part of the equation.  Would you able to participate in the

19    hearing, Ms. Howard, on Saturday afternoon?  And can Mr. Zmuda

20    be available on that date?

21         MS. HOWARD:  Counsel is available.  I don't know if Mr.

22    Zmuda is.  I can check with him.

23         COURT:  Okay.  Well, I assume that he would and you

24    would want him to be available if at all possible so if you'll

25    follow up with that after we get done here today, please.

1          MS. HOWARD:  Well, Your Honor, if I don't know what

2     time I'm calling him, does he need to be available?

3          COURT:  Yes.  You'll recall yesterday I ordered that

4     you have him available for cross-examination.

5          MS. HOWARD:  Okay.

6          COURT:  All right.  Then this issue about -- I just had

7     a very brief moment to look at what had been provided to my

8     chambers just a little bit earlier on the discovery issues and

9     it looks like one of the places you're high-centered on is the

10    plaintiff's request for the identity of the people involved in

11    the execution.  They have proposed that they -- excuse me, the

12    plaintiff has proposed that there be some protective order

13    entered into about that.  I gather, Ms. Howard, that your

14    position is under no circumstances would you agree to identify

15    anyone involved even under a protective order.  Is that right?

16         MS. HOWARD:  Correct, Your Honor.

17         COURT:  All right.  Mr. Loewy, give me your best case

18    about why you need the identities of the people who will be

19    involved so that you can make the arguments you want to make in

20    support of your motion for stay.

21         MR. LOEWY:  Your Honor, it's our position that in order

22    to do the investigation which is necessary to an adequate

23    adversarial process that we must have the names of these

24    individuals.  We need to do background checks of a variety of

25    kinds and while we certainly do not suggest that we have been

1   misled by the State, we have an independent obligation to do

2   what we consider a thorough check and what we consider a

3   thorough check may well be more thorough than what the State has

4   done.  So our position is that for a thorough adversarial

5   process and a fair adversarial process, we need the names.

6         Our position also of course is with the protective

7   order which we have crafted, we just don't see how this could

8   possibly invade any security interest.

9         COURT:  Okay.  And what is it by way of proffer,

10   understanding that you intend to investigate, but what is it

11   that you think that you might discover in investigation if you

12   had the names that you would then argue to the Court ought to

13   stop the execution process?

14         MR. LOEWY:  Well, for starters, qualifications of the

15   individuals and whether they indeed have the credentials,

16   whether they are currently licensed, where they are currently

17   licensed, what their experience is.

18         COURT:  Okay.  So in that regard, you would be seeking

19   information that you would say would contradict anything that

20   the State may represent about such qualifications.  Is that

21   what --

22         MR. LOEWY:  That's correct, Your Honor, and which the

23   State could possibly be unaware of at this point.

24         COURT:  Okay.  Anything else that you would hope to

25   find?

1        MR. LOEWY:  No, Your Honor.

2        COURT:  Okay.  All right.  Ms. Howard, on this issue,

3    what -- I'm trying to get my arms around this issue so that I

4    can potentially give you some indication of how I would rule on

5    that dispute yet today.

6        MS. HOWARD:  Your Honor, I mean there's several reasons

7    that the disclosure of the identity of the team members that

8    we're adamant not occur.  First and foremost, you know, they

9    want to do this investigation.  They don't get to dictate who

10   volunteers, employees, whatever are the execution team and the

11   specialty teams.  That's just not their role.

12        There's a security and safety risk to any member if any

13   identity gets out not only to the person, but if any information

14   gets out as to who these people are, their careers are at risk.

15   I mean, you know, they -- looking at their licenses, looking up

16   certifications, it's going to identify them and then, you know,

17   they'll possibly be ostracized by their profession, be

18   reprimanded, who knows.  Not to mention that they may all of the

19   sudden decide they don't want to be a part of this because

20   they're being targeted, you know, by -- from an odd member of

21   the public out there because they have chosen to do this.

22        So it's just not as simple as, you know, doing some

23   background checks.  We've already stated we've done a background

24   check on these persons.  We've reviewed their credentials.  Jeff

25   is available to testify, you know, without giving up names and

1   numbers of, you know, licenses held by these persons in court at

2   this hearing.  And so, you know, there's just -- it's just too

3   much risk to these people in exposing them by providing their

4   identity even if it just goes to the attorneys.

5          COURT:  Okay.  Mr. Loewy, can you give me any authority

6   from any court which has ordered that the condemned inmate in a

7   1983 action seeking injunctive relief is entitled to the names

8   of the persons involved in the process?

9          MR. LOEWY:  Judge, I can give you authority.  I can

10  give you protective orders from other courts which protect --

11  which of course --

12         COURT:  You gave me I think there was one or two

13  citations --

14         MR. LOEWY:  Right, right.

15         COURT:  -- I have in front of me.  Yeah.

16         MR. LOEWY:  And in fact, in Baze itself, Baze v. Rees,

17  depositions were conducted of the execution team members.

18         COURT:  Yeah.

19         MR. LOEWY:  Our position is I think if I could just add

20  a fact in here which was learned this morning during our

21  discussions with Ms. Howard, my understanding is that the

22  State's position is that they have no documents which are

23  responsive to -- regardless of whether they have an objection to

24  give it over, they have no documents which are responsive to our

25  credentials and experience request which suggest to us since the

1    affidavit was written so recently and the requirements for the

2    teams were apparently crafted so very recently suggests to us

3    that a background check is indeed warranted.

4           If I can address a couple of the other points that Ms.

5    Howard made, I will but I don't know if the Court will entertain

6    that.

7           COURT:  Go ahead.  Go ahead.  Yes, I'll hear it.

8           MR. LOEWY:  We are not trying to dictate the membership

9    of the team which I believe was Ms. Howard's initial foray.  We

10   are merely trying to confirm that the members of the team are

11   sufficiently experienced and qualified to do the job which they

12   intend to do.

13          The second point as I understand that Ms. Howard made

14   was that we should not be allowed to do any sort of background

15   check because the DOC has already done a background check which

16   suggests that we should not have any ability to do any

17   investigation whatsoever which could very well be a more

18   thorough investigation than the DOC itself has done and I note

19   again that the DOC does not have any documents responsive to our

20   first request.

21          Finally, Ms. Howard noted that it may end up that

22   giving this information to the plaintiff's counsel with the

23   protective order that it remain only with plaintiff's counsel

24   would somehow result in one or more of these individuals being

25   targeted by, quote, some odd member of the public.  I just don't

1    think that that's -- not only -- not a possibility just

2    generally as how the world works, I don't see that that's a

3    logical possibility.  Unless we violate the Court's order and

4    supply this information to some third party, our having the

5    information just can't result in some odd member of the public

6    targeting one of these individuals.

7            COURT:  Well, Mr. Loewy, you say you want to do a

8    background investigation and that it may very well be more

9    thorough you believe than anything the State has already done.

10   In the current context of what's happening with Mr. Rhoades'

11   case and this lawsuit having been filed and a pending execution

12   date, isn't the very fact that you're out seeking information

13   from particular sources about qualifications of persons who are

14   either in health care professions or other sorts of work, isn't

15   that running the risk that someone that you will be talking to

16   will if not directly draw the link, indirectly draw the link?

17           MR. LOEWY:  No, Judge.  We, number one, do a lot of our

18   investigation through databases sitting as internet jockeys,

19   number one.  Number two, my office represents a host of

20   individuals and as the Court is aware, my office has more than

21   just the capital habeas unit in it.  Investigating backgrounds

22   for medical providers is not limited, needless to say, to

23   capital cases nor to executions.  We look into backgrounds of

24   medical providers all the time in capital cases having

25   absolutely nothing to do with executions and I'm quite sure the

1   trial unit does as well.

2           COURT:  All right.  Anything else?

3           MR. LOEWY:  If I may also just note that, you know, the

4   licensing board, when you make the request, they're not asking

5   what the inquiry for the request is.  All we're doing is making

6   a request.  The fact that it's the federal defender office which

7   is making the request seems to me it's a bit of a stretch to

8   suggest that the request itself is going to tip people off that

9   those people are execution team members.

10          COURT:  All right.  Ms. Howard, anything else?

11          MS. HOWARD:  Well, yes, Your Honor.  I think Mr. Loewy

12  is minimizing this to be frank.  If he makes a request of the

13  medical board, it's all over the news.  It's been all over the

14  news for the last two days about this execution.  You don't

15  think that someone is going to be like, "Oh, federal defenders.

16  They represent Mr. Rhoades."  I mean that's absurd to say that

17  that -- that there is going to be no connection there and, you

18  know, am I to assume that Mr. Loewy and Ms. Hampton are the only

19  ones that are going to be doing investigative work with regard

20  to all of these team members and on a computer that is secure

21  that no one else is going to have access to or be able to come

22  into after they've been on it and clear it of any search of

23  these individuals?

24          I mean there's just so many variables and so many

25  different possibilities on how this information could get out

1    that there's no way to guarantee the confidentiality to the team

2    members.  If they can't be guaranteed that confidentiality,

3    they're going to -- you know, that's a deterrent for them.

4    They're going to have no interest in being a team member and

5    it's not as if we live in New York City where there's 8 million

6    people and we've got an 8 million person pool out here to find

7    team members that are qualified and willing to do this.

8         And so, you know -- and I'm not also understanding Mr.

9    Loewy's argument that because we don't have documents, a

10   background check needs to be done.  Jeff has represented in his

11   affidavit that he's done background checks and so he's free to

12   cross-examine him on that issue but we've already indicated that

13   those checks have been done and so -- if he doesn't believe us

14   which, you know, that's his right not to believe us but, you

15   know, it's in his affidavit and we're representing to the Court

16   that this stuff has been done, you know, as officers of the

17   court ourselves and so we still take the position the names of

18   these individuals just cannot be released to anybody.

19        I mean as counsel for the department, I have no idea

20   who's on this team.  You know, they haven't even trusted us to

21   provide that identity to us and so there are a limited number of

22   people who actually know who the team members are.

23        COURT:  Ms. Howard, is there a statutory treatment of

24   this issue in Idaho?

25        MS. HOWARD:  There is an IDAPA rule that went into

1   effect last Friday that provides -- let's see.  It's IDAPA Rule

2   06010107 -- excuse me.  06, Section 06, "The department will not

3   disclose under any circumstance the identity of staff

4   contractors, consultants or volunteers serving on escort or

5   injection teams nor will the department disclose any other

6   information wherein the disclosure of such information could

7   jeopardize the department's ability to carry out an execution."

8          COURT:  Okay.  Give me that citation again.

9          MS. HOWARD:  It's IDAPA 06010106.  It's on page 14 of

10   the Rules of the Board of Corrections.

11          COURT:  All right.  I think that is the rule that I had

12   come across when I was looking at this issue in chambers.  And

13   that leads me to the final issue that I wanted to raise with all

14   of you and I don't know that in every case I would make this

15   inquiry but in a case like this, I'm going to because if I

16   don't, I'll be concerned about not having asked.

17          Ms. Howard, is the -- are the amendments to Rule 135,

18   are they amendments that are required to be posted for public

19   review in the administrative bulletin as part of being

20   promulgated.

21          MS. HOWARD:  Are you talking about amendments to the

22   SOP, the department SOP?

23          COURT:  Yes.

24          MS. HOWARD:  No, they're not.  That's just an internal

25   policy that the department -- they'll have -- you know, they'll

1   have people that draft the policies and then it goes to the

2   leadership team and they review it and then it's not -- it's not

3   part of the rule making process.

4         COURT:  It's not considered a rule?

5         MS. HOWARD:  No.  It's just a standard operating

6   procedure that the department has developed.

7         COURT:  All right.  That's what I needed to know.

8         All right.  Well, then to summarize, Mr. Loewy, you're

9   going to check with Dr. Heath and confirm that he's attempting

10  to make himself available for tomorrow afternoon and that's the

11  present plan.  If after talking with him then, drawing the

12  distinctions I had discussed a few minutes ago, you feel as

13  though you can represent to the Court that he simply cannot

14  possibly be available under any circumstances tomorrow

15  afternoon, then I will move the hearing to Saturday afternoon

16  and -- but that onus is on you, Mr. Loewy, to be able to make

17  that representation and you need to make sure that Dr. Heath

18  understands the distinction that I've drawn in this discussion

19  on the record today.

20        I want to hear from you by 5:00 today on that issue

21  because we're going to have to make sure we've got things set up

22  with the courthouse in Brooklyn and we're just going to have to

23  visit with them about making sure that it's available for us but

24  we need to keep in regular contact with them.

25        Then on the issue of this discovery, I'm going to get

1   you something later this afternoon about my viewpoint on the

2   identity issue.  It will be -- I appreciate it's not the benefit

3   of being fully briefed and you're each of course entitled to

4   preserve an objection to whatever I may tell you in that regard

5   and we'll go forward on that basis.  And if I see something else

6   in those documents which as I say I haven't had a chance to read

7   through, I just glanced at the first couple pages, then I'll

8   include that in whatever I issue out this afternoon.

9         Otherwise, you should plan on -- let's move the hearing

10  up to 1:00, 1:00 p.m., so we can have an extra half hour.  That

11  way hopefully we can start with the argument and evidence on the

12  motion to stay no later than 1:30.

13        All right.  Mr. Loewy, any questions about any of that?

14        MR. LOEWY:  No, Your Honor.

15        COURT:  All right.  Ms. Howard?

16        MS. HOWARD:  No.  Not on those specific topics but I do

17  have another question for Your Honor --

18        COURT:  Go ahead.

19        MS. HOWARD:  -- regarding our response that's due at

20  2:00.

21        COURT:  Yes.

22        MS. HOWARD:  It's a reply, I apologize.  Because of

23  this hearing, is there any possibility we could have till 2:30?

24        COURT:  You can have till 3:00.  How's that?  That's

25  fair.  Mr. Loewy, do you have something you need to get -- I

1    can't remember whether you already filed it or not.

2              MR. LOEWY:  No.  We don't have anything, Your Honor.

3              COURT:  Okay.  I know you're all burning the midnight

4    oil and we're trying to get a lot done in a short time.  That's

5    the nature of what's in front of the court so we're all working

6    hard on it.

7              All right.  Mr. Loewy, anything -- hold on, Ms. Case

8    has a question on her face I need to ask her about.

9              MR. LOEWY:  Was that a question to me, Judge, or you're

10   asking Ms. Case?

11             COURT:  No.  Ms. Case was just asking me a question.

12             MR. LOEWY:  Okay.  Thank you.

13             COURT:  Yeah.  Ms. Case reminds me we talked about Mr.

14   Zmuda's availability.  Ms. Howard, I'm going to assume Mr. Zmuda

15   can be available on Saturday if that's what we have to do and of

16   course I think it's the same sort of situation with him as it

17   would be with Dr. Heath, that unless there's something that

18   simply absolutely can't be moved for some reason, then I would

19   expect that he be able to rearrange his schedule to be available

20   at that time.

21             MS. HOWARD:  Your Honor, do you have a tentative time

22   that I can tell Mr. Zmuda in the event that he needs to

23   rearrange things?

24             COURT:  1:00 p.m.

25             MS. HOWARD:  1:00 p.m.?

1          COURT:  Yes.  All right.  Nothing else, we'll be in

2   recess.  Thank you.

3          MS. HOWARD:  Thank you, Your Honor.

4               (Proceedings concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


 /s/ Tamara A. Weber                            11/14/11

Signature of Approved Transcriber              Date


 Tamara A. Weber

Typed or Printed Name